I'm a bit nervous here. This is my first time. So are we. It's OK. Relax. It's only my sixth year in practice. So if I do make a mistake, please correct me. I represent the Appellant Missile. My presentation is very short. I've presented the key arguments in both the opening brief and the reply brief, Your Honor. The One thing that I would like to bring out to Your Honors this morning is the distinguishing factor between the White case versus the Garcia-Cortez case that the appellant cites for her position. This court has decided in 2004 where there is a technical error that causes an appellant to file a brief that violates due process. And so our position is that Miss O has deposited her appeals application to Board of Immigration Appeals in February of 2003, to be exact, February 5th. The deadline for appealing was February 10, 2003. The Airborne Express, which is designated as one of the carriers to use by the Board of Immigration Appeals, did not deliver it until May 30th, 2003. Do we have any records from Airborne Express as to when they received it and so on? No, Your Honor. Are those records available? We only have one letter from the Airborne Express indicating that there was delay and that they are apologetic about the delay. And is the letter in the excerpts of record? Yes, Your Honor. And where is that? The letter is part of the administrative record. Yes, Your Honor. Where is that? There it is. Excuse me, Your Honor. Judge Nelson has just supplied me with the letter. And what was the date on which, according to your records, it was put in the box? It was put in the box on February 5th of 2003, Your Honor. And Airborne Express says it was signed for and delivered by a G. William in Alexandria on the 24th. Unfortunately, a point of origin or actual pick-up date could not be determined in any of our automated systems here at the corporate office. Free charges were never recorded. No documentation on file could associate the sender of the shipment with the customer account number. I'm unable to provide a valid explanation for the error in our system. I apologize for any inconvenience this may have caused. Okay. Thank you. So our position is where there is a technical error, as opposed to error on the part of an appellant or his or her attorney, there is a distinguishing case that this Court has very discouraged deciding in 2004, and Garcia v. Cortez is the case. In that case, the notice of appeal gave notice to the BIA what the arguments were, and then the question was whether the briefs would have done more for the BIA. In this case, they didn't receive anything. So from their standpoint, they got nothing on time and took that action. So the question is, is it not whether we can equate failure to get anything to the BIA on time as a technical violation, or would we have to extend the thesis of Garcia to failure to file on time when the Board gets nothing? That's a very important question, Your Honor. I think the thesis of Garcia is a technical error, and I think my reading of it is when the technical error is based on third party as opposed to the appellant, whether it be the initial filing of the 30-day application period or the brief, those two items make up the appeals process, and if the appellant does not have that opportunity, then the consequences is deportation, which is very grave. Well, I do understand that, that the consequences are grave. But the BIA manual that you rely on, which does, in fact, encourage, strongly recommend use of the overnight delivery, also says that except in exceptional Now, you argue that by not granting relief in this case, it puts the burden on the petitioner to monitor or follow up with the delivery service. Why is that such a burden? Why wasn't there an ability on your part, or were you the counsel? Is there any mechanism in the Airborne Express system to check with them to say, I want confirmation of actual delivery? Yes, Your Honor. That is a very good question. There is a tracking service that is available for both Airborne, which is now part of DHL's system. We did make inquires under the tracking system. The tracking system did not come up with But I mean before you got notice. In other words, if you knew you had to make it by that date certain, was there anything you could have done in the regular course of the services DHL Airborne provides to say, I want confirmation of actual delivery? So you knew that it had not been delivered on time in advance of the BIA having to tell you. Yes, Your Honor. And that would be the tracking system. The tracking system. Yes. And why wasn't that invoked by you? The tracking system was unavailable, but Airborne was tracking it down. And we had receipts of deposit into the box. But when did you start that process? We started. After you got notice. After we got notice. I'm talking about before. In other words, before so. Your Honor, we didn't do that. But you could have done that. I could have done it, Your Honor. Okay. Yes. And you say you have receipts of deposit into the box. Do they contain a date as a date of mailing? Yes, Your Honor. And those dates were put on by you. Yes, Your Honor. So you don't have any receipt from them that shows the date of putting it into the box. The process is that the Airborne or DHL have triplicate receipts. When you sign it, you tear out a slip and you put your documents into the box and you deposit it into the system. Uh-huh. No, I understand. But so it's the thing that you yourself or someone from your office filled out. It's self-declarating. Yes, Your Honor. I understand. But that would show up. I mean, the BIA got it. So whatever they got would have that date on it, right? Yes, Your Honor. Okay. That's in the excerpt of record on page 24. May I ask a question about the D'Cruz case? Versus INS. Is that case distinguishable from yours? And if so, how? Because in that case, it was held that the petition was not timely filed.  Well, once again, the ground for which we are trying to appeal, if I may address, Your Honor, Judge Nelson's case and Judge Fisher's case, there is somewhat of a congruency, and that is what level of what is the boundary or rather at which point the thesis of technical error stop. And I think that's the question here. Ultimately, it isn't fair for that technical error to stretch way out to cover all of the errors. I am mindful of how many cases that BIA is receiving these times. But at the same time, when that technical error is truly not the fault of the appellant, there should be some room for discretion, and that's what we argue. In that case, it was true. It was the INS that made the error. Yes, Your Honor. All right. Here, your case is distinguishable because it was not the INS involved. Anything else distinguishable about the crews? None that comes to my mind right now, Your Honor. All right. I'm sorry. Thank you. I see your time is fleeting, so I won't pursue it. Thank you, Your Honor. Why don't we hear from the government, and then we'll give you a chance to respond. Thank you, Your Honor. Thank you. Mary Jane Kondo, representing the Attorney General, in this matter. There is a single issue before the Court, and that's whether the Board had jurisdiction over this untimely filed appeal. Under De Cruz, the case that Your Honor was just mentioning, the Court found where the appeal to the Board was filed a single day late, the Board lacked jurisdiction, and in addition, this Court lacked jurisdiction to review. Let me ask you a question first, and that's a factual question. Do you contest the accuracy of the representation of the date in which it was put in the Airborne Express box? Well, I agree that that's what the Petitioner's evidence shows. And do you contest that that's true? Are you assuming for purposes of our decision that it's true? Yes. Okay. So you don't contest the accuracy of that statement? No. Okay. No, although I would like to correct one thing that the Petitioner's counsel said. His assistant, who actually put the package into the Express box, the receipt that's in the record that they provided is signed and dated. His assistant said, well, I put it in the box, and immediately thereafter, I realized I forgot to sign and date. So signed and dated their copy. Yes. I'm not sure that that makes any difference whatsoever. But I did notice that subtlety on the record. Yeah. Thank you, Your Honor. May I? I hate to interrupt your argument, but time goes so fast. Yes. I'm going to jump in now. As I read the BIA practice manual, Chapter 3, B-4, allows the BIA to excuse filing delays caused by delivery delays in, quote, rare circumstances. Why isn't this a rare circumstance? Especially when the BIA says use airborne, use, and you don't contest that they were used and were followed. Why isn't this a rare circumstance? Well, Your Honor, the Board didn't say why this isn't an exceptional circumstance, although they did, in fact, say in their decision this is not an exceptional circumstance. They said that with regard, though, to their sua sponsi authority to reopen. Yeah. That's a different question. But the standard, I think, probably is different, Your Honor, slightly. But nonetheless, they considered whether on their own, in their own power, they should reopen this case and concluded that it wasn't appropriate. But I think the – I think this is implicit in Judge Nelson's question. The BIA does indeed have jurisdiction to entertain this appeal even though there's a late filing. Even though? Even though there's a late filing. Yes. So when the BIA, in its order of May 30, 2003, we have dismissed for lack of jurisdiction, that's not right. They had jurisdiction. They just declined to allow the late filing. Isn't that correct? The Board had jurisdiction to consider its jurisdiction, but it did not – the Board could – in theory, the Board could sua sponte reopen any case that's ever been reopened. I'm not asking – it's a little confusing because we've got two Board decisions. I'm asking about the first one. Right. Not the decision not to reopen, but rather the first decision to dismiss for lack of timely filing. That was not a jurisdictional dismissal in the sense that they had no power to accept it. It was, yes. I disagree, Your Honor. It was. But the regulation that Judge Nelson just read to you says that they do have the power to accept a late filing. They just declined to do it. Your Honor, I have to say I'm not familiar with that instruction. To my knowledge, that wasn't in the record. What? The Board's – It's the BIA practice manual. I found it somewhere. I assume in the record, but it's in the manual. The BIA practice manual says we allow the BIA to excuse filing delays caused by delivery delays in quotes where circumstances. The same manual strongly recommends that whenever possible, petitioners use overnight delivery services such as Airborne Express to ensure timely delivery. Well, I'm not familiar with that, Your Honor. But, as I said, the statute requires a certain amount of time to file and the regulation requires a certain amount of time to file and does not permit exceptions to that. Well, that's not true. I mean, in fact, the case that D'Cruz relies upon is Hernandez-Rivera, and Hernandez-Rivera says ordinarily the time limit within which to file a notice of appeal shall be mandatory and jurisdictional. Then it goes on to say, Despite the note of finality sounded by this principle, it is not inflexible. Under certain unique circumstances, an appellate tribunal may have jurisdiction to hear an appeal that was not filed within the prescribed time limits. And it goes on to provide examples. The argument that emerges from the BIA's practice manual is when somebody follows the basically the advice, strong advice of the BIA to do exactly what they did and then says in the subsection 4, delays in delivery, that admittedly it puts them on notice of the problem. Postal or delivery delays do not affect existing deadlines, nor does the Board excuse untimeliness due to such delays, except in rare circumstances. So if the Board doesn't think it has jurisdiction, how could it even suggest that there would be a rare circumstance? Well, first of all, I'd like to address Hernandez-Rivera, Your Honor. That's a 1980 case. And I'm not sure that it's as applicable today as it was then because the regulations have changed. The section that Hernandez-Rivera was talking about was an older section. I think it was 2 ACFR 241 or 242 that set a 14-day deadline. Since then, there have been a lot of changes to the regulations setting the motion reopen deadline. There's been this Court's case in D'Cruz. I mean, the Board is obligated to follow. But the D'Cruz relied on Hernandez. But the regulation, well, you're yes, it did. It did, Your Honor. But it was looked at. But D'Cruz said it's mandatory and jurisdictional. So the BIA manual is, in fact, out of date itself, even though it was revised in 2002? I'm not familiar with that manual, Your Honor. I'm sorry about that. But the other thing about the manual is the Board has, it's not in the record, Your Honor. The manual is not in the record? It's not in my copy of the administrative record. But does it need to be? Meaning we don't need in the record administrative regulations or statutes or, you know. Well, Your Honor, the statute says that the Court's review is limited to the administrative record. But that doesn't mean just because a relevant statute is not in the administrative record, we can't look at the statute. Well, of course the Court looks at statutes. And regulations also? But this book doesn't have the force of law, Your Honor. No, it's a statement of the BIA's practice recommendations, which presumably petitioners who are looking for guidance in this very, it's somewhat a character, Byzantine setup. And I'm not. Conceded, Your Honor. Yeah, okay. So they look for guidance. They follow it. And then the Board, I mean, the Board by its own ruling said, A, we don't have to exercise our discretion. And that's confusing. Can I point out one other additional thing about that manual, Your Honor, is that the Board decides cases throughout this country, but the Board is bound to follow the law in each circuit. As you know, the circuit, the law is not the same in every circuit. This Court does have D'Cruz. And it's, and D'Cruz flat out says it's mandatory and jurisdictional. So if we clarify D'Cruz as having relied on Hernandez, which suggests there's an overstatement, you think then the Board would feel differently and would, as in other circuits apparently, be willing to entertain an exceptional case? Well, cases that arise within this circuit. So the Board has jurisdiction, and it's not mandatory, in circuits other than the Ninth Circuit. It's only D'Cruz. Well, I'm not familiar with the case law in the other courts, Your Honor. Well, I'm trying to understand, because. Well, I'm. Can we take judicial notice of the BIA practice manual? Certainly, Your Honor, but I would request an opportunity to file something supplemental, not having addressed that. And in addition, I'd like to point out none of these arguments were raised by the Petitioner. Of course, I've been reviewing this matter and trying to make sure that I'm ready for every question. And I would, let's just, I would like to go ahead with Hernandez-Rivera, assuming that Hernandez-Rivera says, and that it's applicable to D'Cruz, that there are exceptions. In Hernandez-Rivera, it was an exceptional circumstance. What the Court was looking at there, where there was an official misleading. In Hernandez-Rivera, the immigration judge granted extensions that Petitioner's counsel requested, and erroneously. It was erroneously done. But the judge thought it was correct. Petitioner's counsel thought it was correct. The government didn't object. And what happened was the Petitioner then later filed an appeal, counting the time based on the extensions that the judge granted. The board said, it's out of time and we lack jurisdiction. That was the exceptional circumstance. And Hernandez-Rivera cited at least two district court cases where the exact same thing happened, where the judges thought they were granting a proper extension and everyone believed that, and then the appeal ended up being filed late. There was no official misleading here. This isn't that type of extraordinary circumstance. Well, to the extent it suggests that they use airborne and overnight, that is a bit misleading. Perhaps, Your Honor, the – well, the reason that we file that way, when we have something, a specific due date where something has to be at the court. In fact, as Your Honor pointed out, it's because you can track those shipments. You can find a signature. You can look at it and make sure that it's there. And particularly in Petitioner's case, he filed it. He had 30 days to file his appeal. He said that he put it in the box or his assistant put it in the box five days before it was due. If they had checked on Airborne Express on their website, they could have found – well, they wouldn't have found their document on there and tried to follow up or perhaps send it again within time. In other words, they're going to be punished under your theory because they sent it five days earlier instead of on the last possible day? No, Your Honor. I certainly don't think that that would be anything that would merit any kind of extraordinary circumstance. There has to be finality in these cases. I see that my time is up. The – the – We're generous on time. I've noticed. Petitioner wants to raise a lot of constitutional arguments. Respectfully, there's no merit to those arguments whatsoever. I think we understand. Thank you. Now, if we decide we want further briefing on this question of the applicability or meaning of the practice manual, we'll do that by separate order. Thank you, Your Honor. In that case, I'd be happy to also brief Hernandez-Rivera and its effect on D'Cruz if the Court would like that. Thank you. We'll do that by separate order. Thank you, Your Honor. Thank you. There are no further statements. If Your Honors have questions, I'll be happy to move on. Thank you. Thank you very much. Thank you. It's a very pleasure being here. Thank both of you. A tricky case and a useful argument. The next case on the argument calendar is Oilman Participation Corporation v. Weber. Mr. Weber. Mr. Weber.  For those of you waiting, we should say that immediately following the argument in this case, we will take about a 10-minute break. This case is scheduled to go 20 minutes each side. So if you're trying to engage when you want to make your phone calls or whatever, that will help you. And if you want to leave now, you may. Good morning. May it please the Court. I'm Terrence Thompson, Assistant Attorney General for the State of Texas. I'm pleased to be before the Court this morning to offer argument in support of the positions of the appellant in this case. The appellant, Christopher Weber, is a State-appointed receiver.
judges: D.W. Nelson, W. Fletcher, Fisher